UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

FILED
MAY 24 2017
CLERK

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN REZAC,<br><br>Defendant. | 3:16-CR-30051-RAL<br><br>REPORT AND RECOMMENDATIONS FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS |
|---|---|

Martin Rezac is charged with making (1) telephonic bomb threats to South Dakota Veteran's Administration (VA) facilities and (2) false statements relating to explosives in his home. Two FBI agents interviewed him while he was hospitalized and he made statements to the agents which he now seeks to suppress. Because the statements were lawfully obtained, the Court recommends that Rezac's suppression motion be denied.

## BACKGROUND

On November 27, 2015, FBI Agents Bradley Murkins and Gina Palokangas interviewed Rezac at the Regions Hospital in St. Paul, Minnesota. Rezac had been admitted to the hospital the day before after being injured in his home while making flash paper for magic shows. When they arrived, the agents asked, and were given

permission to speak with Rezac. The agents already knew about the explosion and that he had been injured and was on medication.

Once in the room, the agents introduced themselves to Rezac, who was awake and lying in bed. Agent Murkins then orally advised Rezac of his *Miranda* rights and asked if he would be willing to talk to the agents without a lawyer present. Rezac responded, "Yeah, to a certain extent and continued on saying something to the effect that, "With all that's happening and until I feel uncomfortable." As Rezac was making these last remarks, Agent Murkins announced that the time was 6:18 p.m. After that, the agent began questioning Rezac about a number of matters.

During the interview, Rezac spoke extensively about the chemicals he used to make explosive devices and where he got the information to do so. He admitted that he tried to make hexamethylene triperoxide (HMTD) and said that he planned to use the explosive to shoot rockets into the air. He denied though having additional explosives in his home or anything else that would be injurious to someone visiting it. He also denied making threats to the VA.

About half way into the interview, Rezac began coughing. Agent Murkins inquired if Rezac was alright and if he wanted something to drink. When Rezac said he needed to do his nebulizer, the agent asked if he wanted to stop for a while. Rezac replied, "No, I ain't planning on blowing nothing up or making nothing like that." The dialogue continued on from there for an additional 20 minutes. Ultimately, the interview ended at 6:59 p.m. and the agents went on their way.

Several months later, Rezac was indicted and charged with two counts of making a threatening communication by telephone and one count of making false statements. He thereafter moved to suppress his statements, claiming that they were elicited in violation of *Miranda*[1] and the Fifth Amendment to the United States Constitution.

The Government filed a response to the motion, resisting Rezac's claims. An evidentiary hearing was held on May 11, 2017, at which one witness testified and five exhibits were received into evidence. Rezac is scheduled to stand trial on all three charges this summer.

## DISCUSSION

Rezac claims that the waiver of his *Miranda* rights was invalid and that the statements he gave to Agents Murkins and Palokangas were involuntary under the Fifth Amendment. He seeks to exclude his statements, presumably as both substantive and impeachment evidence.

### A. Waiver

The *Miranda* waiver inquiry has "two distinct dimensions": the waiver must (1) have been voluntary in the sense that it was the product of a free and deliberate choice rather than "intimidation, coercion, or deception" and (2) be made "with a full awareness of both the nature of the right being abandoned and the consequences of the

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

decision to abandon it."[2] The totality of the circumstances are to be considered when determining whether a suspect's waiver is invalid.[3]

The recording irrefutably shows that Rezac waived his *Miranda* rights. There is no basis to conclude that he did not understand his rights. It therefore follows that he chose not to invoke or rely on them when he spoke to the agents.

First, credible evidence proves that Rezac was mindful of his rights and knew what he was doing.[4] He was read each of them, including his right to remain silent, to have an attorney present, and to stop answering questions at any time.

Second, Rezac's oral waiver is a telling manifestation that he understood his rights and was disposed – at the time – to giving them up. And his willingness to engage in a lengthy colloquy without the benefit of a lawyer and make statements – many of which were incriminating – was a "course of conduct indicating waiver" of his rights.[5] If Rezac wanted to remain silent, then he could have said nothing in response to the agents' questions, or he could have unambiguously invoked his *Miranda* rights and

---

[2]*Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

[3]*See Burbine*, 475 U.S. at 421.

[4]*See Berghuis*, 560 U.S. at 385-86; *Burbine*, 475 U.S. at 421.

[5]*Berghuis*, 560 U.S. at 386.

4

ended the interrogation. The fact that he chose not to and elected to participate in a sustained dialogue with the agents by himself is validation of a full-fledged waiver.[6]

Third, there is no evidence, worthy of belief, that Rezac's statements were coerced.[7] At no time did the agents threaten or intimidate Rezac or yell, raise their voices, or become hostile toward him. Nor did the agents use any force, employ punishment, brandish their weapons or use rubber hose tactics to get him to talk. Rezac's age, education, background (including his familiarity with the criminal justice system), and conduct that day did not intimate that he was low functioning or particularly suggestible and vulnerable to questioning by authority figures. His responses to inquiries also convincingly showed that he was not suffering from any mental afflictions or having any difficulty understanding questions put to him. And he cooperated with the agents, talking on his own and volunteering information at times, and denied making threats to blow up any of the VA's facilities or harm anyone in them.

Rezac contends that "being hospitalized for injuries" and "under the influence of pain medication" made his waiver invalid. But he never asked to stop the interview or provided any sign that he was too languid to go on. Nor did he establish that the

---

[6]*See id.*

[7]*See id. (citing Burbine,* 475 U.S. at 421); *Colorado v. Connelly,* 479 U.S. 157, 163-67, 170 (1986).

5

medications he was on caused his will to be overborne.[8] More importantly, there was no coercive, overbearing, or abusive activities on the part of the agents that enervated Rezac's will and marred his decision-making faculties.[9]

Rezac cites to *Mincey v. Arizona*[10] in support of his suppression motion. *Mincey*, however, is distinguishable. Unlike the defendant there, Rezac was not (1) depressed almost to the point of coma; (2) suffering from "unbearable" pain; (3) unable to think coherently; (4) "encumbered by tubes, needles and [a] breathing apparatus"; (5) forced to write his answers to questions on pieces of paper; and (6) falling in and out of consciousness.[11]

The fact that there was no signature "confirming" Rezac's waiver does not matter. A waiver may be express or implied and need not be verified with a signature.[12]

---

[8]*See United States v. Howard*, 532 F.3d 755, 763 (8th Cir. 2008); *Crowe v. United States*, Civ. 09-3030-KES, CR. 08-30033-KES, 2010 WL 5093378 at *4 (D.S.D. Dec. 8, 2010).

[9]*See United States v. Warbritton*, 360 Fed. Appx. 698, 699 (8th Cir. 2010); *United States v. New*, 491 F.3d 369, 374 (8th Cir. 2007); *Crowe*, 2010 WL 5093378 at *4; *see also United States v. Siddiqui*, 699 F.3d 690, 707 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 2371 (2013); *United States v. Casellas*, 149 F.Supp.3d 222, 244-45 (D.N.H. 2016); *United States v. Abdulmutallab*, No. 10-20005, 2011 WL 4345243 at *3 (E.D. Mich. Sept. 16, 2011); *United States v. El-X*, Crim. No. 11-109 (PJS/JJG), 2011 WL 3155691 at *4 (D. Minn. July 6, 2011), r & r adopted, 2011 WL 3154859 (July 26, 2011).

[10]437 U.S. 385 (1978).

[11]*See and compare id.* at 398-400.

[12]*See Berghuis*, 560 U.S. 383-85; *North Carolina v. Butler*, 441 U.S. 369, 373, 375-76 (1979); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orrin S. Kerr, *Criminal Procedure*, §6.9(a) at 910-13 & nn. 6, 12-14 (4th ed. 2015).

6

In the final analysis, this is not one of those isolated cases in which a suspect, after being properly advised of his *Miranda* rights, failed to make an open and autonomous decision to speak with probing agents and incriminate himself. There is nothing in the record that demonstrates Rezac was incapable of waiving his rights because he was in severe pain or under the influence of medications being administered to him. Nor did he say or do anything that conveyed an inability on his part, to comprehend and appreciate his rights and the implications of what he was doing. Instead, the recording establishes that he was quite cognizant of his situation and willing to converse with the agents. His statements were made with a full awareness of his rights and after he knowingly, voluntarily, and intelligently waived them.[13]

---

[13]*See Berghuis*, 560 U.S. at 382-89; *Butler*, 441 U.S. at 373-76; *United States v. Adams*, 820 F.3d 317, 323-24 (8th Cir. 2016); *United States v. Nguyen*, 250 F.3d 643, 645 (8th Cir. 2001); *United States v. Turner*, 157 F.3d 552, 555-56 (8th Cir. 1998); *see also United States v. Cristobal*, 293 F.3d 134, 140-43 (4th Cir.) (defendant's waiver of his *Miranda* rights, prior to police officers conducting interrogation of him while hospitalized, was valid even though he had been given pain killers and narcotics before the waiver), *cert. denied*, 537 U.S. 963 (2002); *United States v. Morris*, 287 F.3d 985, 988-89 (10th Cir.) (defendant's *Miranda* waiver and statements to agent while he was in the hospital and on pain killer medication after being shot twice were knowingly, voluntarily and intelligently made and were not coerced), *cert. denied*, 536 U.S. 933 (2002); *United States v. Guay*, 108 F.3d 545, 550 (4th Cir. 1997) ("a defendant may voluntarily waive his rights even when in the hospital, on medication, or in pain"); *State v. Pinela*, 458 N.W.2d 795, 797 (S.D. 1990) (defendant's *Miranda* waiver was valid even though he was being treated for shock in a hospital following a severe traffic accident; physical injuries or medical treatment must affect defendant's ability to intelligently decide whether to waive his rights before a confession is rendered inadmissible); *see generally* 2 *Criminal Procedure*, §6.9(b) at 918-20 & nn. 37-38, 40-43.

## B. Voluntariness

"Cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of *Miranda* are rare."[14] The same analysis used in evaluating the voluntariness of a defendant's *Miranda* waiver applies when determining the voluntariness of the defendant's statements under the Fifth Amendment.[15] Under this analysis, "[a]bsent evidence that [the defendant's will] was overborne and his capacity for self-determination critically impaired because of coercive police conduct," the statements he made will be considered voluntary.[16]

The Court has already concluded that Rezac voluntarily waived his *Miranda* rights. The record as a whole likewise shows that the statements he gave to the agents were voluntary within the meaning of the Fifth Amendment's Due Process Clause. They were not extracted by threats, violence or express or implied promises that overwhelmed his will and acutely disabled his capacity to resist the urge to confess.[17]

---

[14]*Dickerson v. United States*, 530 U.S. 428, 444 (2000) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984)).

[15]*See United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995) (a court must consider the conduct of the police when determining whether defendant's will was overborne for either his confession or his *Miranda* waiver).

[16]*Colorado v. Spring*, 479 U.S. 564, 574 (1987).

[17]*See United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005).

8

Rather, they were the product of essentially free and unconstrained choices he made.[18]

This being the case, the statements may be used against him as substantive evidence at trial.[19]

## CONCLUSION

Rezac was properly advised of his *Miranda* rights, waived these rights without invoking any of them, and made voluntary statements to Agents Murkins and Palokangas, who together took no action that could be considered coercive or overstepping their bounds. His motion – which seeks to suppress the statements on *Miranda* and voluntariness grounds – is thus without merit and provides him with no basis for relief.

## RECOMMENDATION

Accordingly, it is hereby

---

[18]*See Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).

[19]*See Warbritton*, 360 Fed. Appx. at 699; *Howard*, 532 F.3d at 763; *New*, 491 F.3d at 374; *United States v. Lawrence*, 735 F.3d 385, 437-38 (6th Cir. 2013), *cert. denied*, 135 S.Ct. 753 (2014); *Siddiqui*, 699 F.3d at 707; *Casellas*, 149 F.Supp.3d at 244-45; *Abdulmutallab*, 2011 WL 4345243 at **3-4; *El-X*, 2011 WL 3155691 at **3-4; *Crowe*, 2010 WL 5093378 at *4; *see also State v. Joseph*, No. ED103554, 2016 WL 7094036 at **5-6 (Mo. Ct. App. Dec. 6, 2016) (defendant's statements at the hospital were voluntary under the Due Process Clause of the 14th Amendment); *Rogers v. State*, 290 Ga. 18, 19-20, 717 S.E.2d 629, 631 (2011) (defendant's hospitalized statements were freely and voluntarily made even though he was "at first disoriented" and "in a lot of pain"); *see generally* 2 Criminal Procedure, §6.2(c) at 714-16 & nn. 174, 180-81.

RECOMMENDED that Rezac's Motion to Suppress Statements[20] be denied for the reasons, and based on the authorities, stated herein.

**NOTICE**

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[21] Unless an extension of time for cause is later obtained,[22] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[23] Objections must "identify[] those issues on which further review is desired[.]"[24]

DATED this 24th day of May, 2017, at Pierre, South Dakota.

BY THE COURT:

_/s/ Mark A. Moreno_

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[20] *See* Docket No. 24.

[21] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[22] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[23] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[24] *Arn*, 474 U.S. at 155.